Henry James HOWARD,
Plaintiff-Appellant,

v.

ROADWAY EXPRESS, INC.,
Defendant-Appellee.

No. 83–8078.

United States Court of Appeals,
Eleventh Circuit.

March 12, 1984.

John D. Allen, Columbus, Ga., for plaintiff-appellant.

William F. Gardner, Birmingham, Ala., James F. Humes, II, Columbus, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this appeal, plaintiff Henry James Howard challenges the district court's orders granting summary judgment in favor of, and awarding court costs and attorney's fees to, defendant Roadway Express, Inc. in an action under Title VII, 42 U.S.C. § 2000e and section 1981, 42 U.S.C. § 1981. The case presents three issues: (1) whether Howard's charge under Title VII was filed with the EEOC in timely fashion and whether his section 1981 claim was barred by the applicable statute of limitations; (2) whether his lawsuit was barred by the doctrine of laches; and (3) whether there was no discrimination as a matter of law. We conclude that the court below erred in granting summary judgment with respect to Howard's claim under Title VII and his claim for equitable relief under section 1981. Accordingly, we reverse the judgment of the district court and remand for further proceedings, and vacate the award of costs and fees to Roadway Express.

## I. FACTS AND PROCEEDINGS BELOW

Howard, a black male, was employed by Roadway Express on a part-time basis from 1972 to 1976. In May 1976, he applied for regular employment as a pickup and delivery driver, and was required to take a polygraph test. His application was rejected in July of that year, and he has not since worked for Roadway Express. Franklin

Wilborn, a black male, was hired for regular employment in June 1977.

In December 1976, Howard filed a charge with the EEOC. Daniel Gunn, Roadway Express' vice-president for employee and labor relations at the time, acknowledged receipt of the charge in January 1977. In 1978, Howard's attorney requested issuance of a right-to-sue letter and then withdrew the request. Also that year, Jerry Flynt, the Roadway Express employee responsible for handling Howard's application, died. In December 1981, the EEOC determined that there was no reasonable cause to believe Howard's allegations of racial discrimination and issued a Notice of Right to Sue.

The action giving rise to this appeal was filed in March 1982 in the Middle District of Alabama and was later transferred to the Middle District of Georgia. In his complaint, Howard alleged, *inter alia,* that because of his race he had been subjected to conditions for full-time employment to which similarly situated whites had not been subjected, *i.e.,* polygraph examination, and that Roadway Express had maintained a pattern and practice of discrimination for several years continuing up to the time of his application. In November 1982, Roadway Express filed a motion for summary judgment accompanied by affidavits supporting its contention that the action was time-barred. In its order of December 28, 1982, the district court ruled that Howard's claims were barred by the doctrine of laches and, in the alternative, that there was no discrimination inasmuch as the person selected for the position Howard sought was black. In its supplemental order of January 26, 1983, the court awarded Roadway Express court costs and attorney's fees totaling $5,289.95, for which Howard and his attorney were adjudged jointly and severally liable.

## II. THE PERIOD FOR FILING EEOC CHARGE AND THE STATUTE OF LIMITATIONS

■ Roadway Express' assertion that the Title VII claim was precluded by Howard's failure to file a timely EEOC charge was not discussed by the district court and may be disposed of quickly on appeal. Under § 706(e) of the statute, "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...." 42 U.S.C. § 2000e–5(e). In its brief in support of its motion for summary judgment, Roadway Express conceded that "the plaintiff's charge in December 1976 came ... within 180 days following July 1976 when his application for regular employment was rejected." However, it added that, · as shown by his deposition testimony, the complaint was actually based on Roadway Express' passing over Howard in favor of another person in 1973, some three years. preceding the EEOC filing. We conclude that the deposition does not support Roadway Express' characterization of the complaint; rather, the alleged unlawful employment practice was the rejection of Howard's application on the basis of race following the discriminatory administration of a polygraph test in 1976. The EEOC charge at issue, therefore, was timely filed.

■ Roadway Express' contention that the section 1981 claim was precluded by the applicable statute of limitations is partially meritorious. As a general rule, where there is no federal statute of limitations expressly applicable to a federal claim, the most closely analogous statute of limitations under state law applies. *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Because section 1981 contains no express limitations period, the controlling period is ordinarily taken from the law of the state in which the action was filed. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Scarlett v. Seaboard Coast Line Railroad Co.,* 676 F.2d 1043, 1050 (5th Cir. Unit B 1982); *Whatley v. Department of Education,* 673 F.2d 873, 874 (5th Cir. Unit B 1982). Although the present action was originally filed in Alabama, the events from which the case arose occurred in Georgia, and venue was changed to the Middle District of Georgia. As Georgia was the forum state, we look to its law for the appropriate statute of limitations. *See Scarlett,* 676 F.2d at 1051.

■ Employment discrimination actions under section 1981 most closely resemble state-law "suits for the enforcement of rights accruing to individuals under statutes" and therefore are governed by section 9–3–22 of the Georgia Code. *Stafford v. Muscogee County Board of Education,* 688 F.2d 1383, 1389 (11th Cir.1982); *Scarlett,* 676 F.2d at 1050–51; *Whatley,* 673 F.2d at 877. Section 9–3–22 provides:

> All actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years after the right of action has accrued; provided, however, that all actions for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime shall be brought within two years after the right of action has accrued.

6 Ga.Code § 9–3–22 (1982).

Howard seeks declaratory and injunctive relief as well as damages for "earnings, wages, and other benefits." In such a situation, the state statute "must be applied in a bifurcated manner so that an action for equitable relief is barred only after 20 years, but an action for back pay is barred after only 2 years." *Stafford,* 688 F.2d at 1389 (quoting *Whatley,* 673 F.2d at 877). Because this suit was filed over five years after the right of action accrued, Howard's section 1981 claim for back pay was barred;[1] his claim for equitable relief, however, was not barred by the statute of limitations.

### III. LACHES

■ Even where the legal limitations periods have not run, the equitable doctrine of laches is applicable to Title VII and section 1981 actions brought by private plaintiffs. *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1256 (5th Cir.1979), *aff'd on other grounds,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). "To apply laches in a particular case, the court must find both that the plaintiff *delayed inexcusably* in bringing the suit and that this delay *unduly prejudiced* defendants." *EEOC v. Dresser Industries, Inc.,* 668 F.2d 1199, 1202 (11th Cir.1982) (quoting *Bernard,* 596 F.2d at 1256) (emphasis added). Under this two-part analysis, the doctrine of laches does not apply to Howard's claims.

■ Roadway Express, like the defendants in *Bernard,* emphasizes the plaintiff's early knowledge of his cause of action and his ability to obtain a right-to-sue letter as indicative of inexcusable delay. Like the plaintiffs in that case, Howard asserts his right to await completion of the EEOC administrative process. Thus we are confronted with the issue "whether plaintiff['s] failure to file a private action until after the termination of the EEOC's active, continuing administrative process is unreasonable." 596 F.2d at 1256.

In *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Supreme Court observed, "[w]hen Congress first enacted Title VII in 1964 it selected '[c]ooperation and voluntary compliance ... as the preferred means for achieving' the goal of equality of employment opportunities." *Id.* at 367–68, 97 S.Ct. at 2455. This preference for the administrative resolution of claims is also reflected in the legislative history of the 1972 amendments to Title VII:

> It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General as appropriate. However, as the individual's right to redress are [sic] paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief.

118 Cong.Rec. 7565 (1972).

We agree with the former Fifth Circuit's conclusion that:

> [T]he private remedy allowed by 42 U.S.C. § 2000e–5(f)(1) is only an alternative method for a plaintiff to obtain relief from discrimination. A plaintiff cannot be penalized for choosing to forego this

---

1. Under *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), Howard's filing a charge with the EEOC under Title VII did not toll the running of the limitations periods applicable to his action under section 1981.

alternative and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC.

*Bernard,* 596 F.2d at 1257 (footnote omitted). We see no reason to make an exception in this case and therefore hold that Howard's failure to file his Title VII claim until completion of the EEOC process was not inexcusable delay and cannot support the application of laches.[2]

With respect to Howard's claim for equitable relief under section 1981, we reach the same result. A plaintiff in an employment discrimination case may not be faulted for deferring action on his section 1981 claim until completion of the EEOC process. If he were to file suit on his section 1981 claim prior to the termination of an extended EEOC investigation, he would run the risk of losing the judicial remedy for Title VII violations under the doctrine of res judicata. A plaintiff can, of course, obtain a right-to-sue letter 180 days after filing his charge with the EEOC and then bring an action on both claims, but we are reluctant to penalize a plaintiff who chooses to pursue "the legislatively and judicially favored method of relying on the administrative processes of the EEOC." Hence we hold that Howard's delay in filing his section 1981 claim was not inexcusable and cannot support the application of laches.[3]

Given the absence of inexcusable delay on Howard's part, we need not reach the undue prejudice part of the analysis. We note, however, that Roadway Express was notified of Howard's charge well within a year of the alleged discriminatory act. At that time, Roadway Express could have maintained its records and taken the testimony of key employees in anticipation of the ensuing litigation. As the Supreme Court noted in *Occidental:*

> Unlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit within 10 days after a charge has been filed. This

2. This case cannot be distinguished from *Bernard* on the ground that here the EEOC ultimately issued a no-reasonable-cause determination. A plaintiff may not be faulted for relying on the administrative process prior to the issuance of a no-reasonable-cause determination, for there remains the potential that the EEOC investigation will result in conciliation or prosecution on the EEOC's part. After the issuance of a no-reasonable-cause determination, of course, the plaintiff may not reasonably rely on the administrative process. In this case, however, Howard filed suit relatively soon after receiving the adverse EEOC determination.

Our holding is also consistent with the *Dresser* decision, in which this court applied the doctrine of laches to an action filed by the EEOC. There the court cited *Bernard* with approval and in no way suggested that inexcusable delay attributable to the EEOC may be transferred to the plaintiff in a private suit.

3. Our conclusion is consistent with *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), in which the Supreme Court held that the timely filing of an EEOC charge does not toll the *statute of limitations* governing a section 1981 action based on the same facts. Applying the appropriate limitations period under state law in the absence of a federal statute of limitations, the Court adopted the corresponding state-law tolling provisions, stating, "[i]n borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Id.* at 464, 95 S.Ct. at 1722. The Court noted that "considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration," *id.* at 465, 95 S.Ct. at 1723, but declined to do so given that "Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII," *id.* at 466, 95 S.Ct. at 1723. In contrast with *Johnson,* the instant case involves the application of an *equitable doctrine* designed to prevent unfairness to the defendant due to the plaintiff's delay. Thus we are concerned primarily with the equities of the parties, specifically the question whether the delay on the plaintiff's part was "inexcusable." Accordingly, we are not squarely faced with the issue whether a state tolling principle is sufficiently inconsistent with federal policy to warrant departure therefrom. While recognizing that the congressionally created administrative and judicial remedies are distinct, we conclude that the equities involved militate against the disparate application of the doctrine of laches.

prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action.

432 U.S. at 372, 97 S.Ct. at 2457. And as the court observed in *Bernard,* "[a] party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim." 596 F.2d at 1257. It would appear, then, that any prejudice to Roadway Express resulting from the destruction of records or the death of an employee may not·be attributed to Howard's delay.

## IV. NO DISCRIMINATION AS A MATTER OF LAW

█ As an alternative ground for granting Roadway Express' motion for summary judgment, the. district court stated, "the undisputed facts establish that there was no discrimination against the Plaintiff [inasmuch as t]he person who was hired for regular employment following the Plaintiff's application in 1976 was a black man . . . ." In support of its conclusion, the court stated, without citation, "[i]t has been firmly established by precedent that there can be no racial discrimination against a black person who is not selected for a job when the person who is selected for the job is black." Because the district court misstated the applicable law and erred in determining that there was no genuine issue of fact with regard to discrimination, we reject this ground for granting summary judgment.

Although some case law appears to support the per se rule adopted by the court below, *see, e.g., Jefferies v. Harris County*

*Community Action Association,* 615 F.2d 1025 (5th Cir.1980),[4] we are persuaded by the analysis in *Jones v. Western Geophysical Co. of America,* 669 F.2d 280 (5th Cir. 1982). In that case, the court was similarly faced with a grant of summary judgment based on a finding that the plaintiff, who alleged discriminatory discharge, had been replaced by another black person. In reversing, the court rejected the proposition that under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), an absolute requirement for a prima facie case is a showing that after the plaintiff's discharge the defendant hired a person who was not in the plaintiff's protected class, *i.e.,* black. The court reasoned:

All that the plaintiff need do is prove by a preponderance of the evidence that he was discharged from the position for which he was qualified "under circumstances which give rise to an inference of unlawful discrimination." The underlying purpose of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of· discrimination. But proof that the employer replaced the fired minority employee with a non-minority employee is not the *only* way to create such an inference.

*Id.* at 284 (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (emphasis in original). Emphasizing that "[t]he mover must bear the burden of proof, and 'all reasonable doubts as to the existence of the genuine issue of material fact' have to be resolved against him" and that

---

4. In *Jefferies,* the former Fifth Circuit rejected a black plaintiff's claim of racial discrimination in promotion because the person granted the promotion for which the plaintiff had applied was also black. Relying on *Adams v. Reed,* 567 F.2d 1283 (5th Cir.1978), a sex discrimination case, the court reasoned, "where both the person seeking to be promoted and the person achieving that promotion were women, 'because the person selected was a woman, we cannot accept sex discrimination as a plausible explanation for [the promotion] decision.'" *Jefferies,* 615 F.2d at 1030 (quoting *Adams,* 567 F.2d at 1287). In *Jefferies,* the defendant was faced with a choice between two black appli-

cants and chose one over the other; it was therefore implausible, if not logically impossible, for the decision to have been racially discriminatory. In this case, by contrast, the two black applicants apparently did not apply at the same time, so there was no analogous choice between blacks. Since Roadway Express did· not choose the later black applicant over Howard, it is logically possible and plausible that its rejection of Howard's application was racially discriminatory. Consequently, *Jefferies* does not actually support the rule urged by Roadway Express and does not control our decision.

"summary judgment should be 'used cautiously' in Title VII cases," *id.* at 283 (citations omitted), the court examined the record to determine whether the fact that another black was hired would rule out the inference of discrimination and thereby preclude the plaintiff from establishing a prima facie case. Noting conflicts in the affidavits as to whether the plaintiff was replaced at all by the subsequently hired black and, if so, whether his replacement by another black was a pretextual device specifically designed to disguise an act of discrimination, the court held that there were genuine issues of material fact and that summary judgment was inappropriate.

Reminiscent of *Jones,* the record in this case leaves unresolved the question whether the black person hired for regular employment after Roadway Express rejected Howard's application did in fact fill the position to which Howard had applied. Even if the job offered to the other black were the same, the lapse of eleven months would significantly diminish the reliability of the subsequent hiring as an indicator of Roadway Express' intent at the time it rejected Howard's application. In addition, that Roadway Express hired another black person only after Howard had filed a charge with the EEOC suggests that the hiring might have been motivated by the filing. The hiring, then, would scarcely rule out the inference of discrimination in connection with the earlier denial of Howard's application.

More important, Howard's allegations throughout this litigation and his affidavit submitted in opposition to the motion for summary judgment raise the issue whether, regardless of who was ultimately hired, Howard was denied employment as a result of a racially discriminatory practice, *i.e.,* the requirement that black applicants, unlike their white counterparts, undergo polygraph examination. To the extent that they focus on the facts pertinent to the time limitations arguments and the fact that another black was hired, the affidavits submitted by Roadway Express by no means settle this issue.

In this last respect, the present case resembles two recent cases in which the Fifth Circuit applied the analysis in *Jones.* See *Cockrham v. South Central Bell Telephone Co.,* 695 F.2d 143 (5th Cir.1983); *Byrd v. Roadway Express, Inc.,* 687 F.2d 85 (5th Cir.1982). In each, notwithstanding the plaintiff's allegations of racially discriminatory practices which preceded his discharge and indicated the defendant's discriminatory intent with regard to the discharge, the lower court entered judgment for the defendant on the ground that the plaintiff had been replaced by a black person. In *Byrd,* the court observed, "that [the plaintiff] was replaced by a black does not necessarily negate the possibility that his treatment and discharge were motivated by racial discrimination." 687 F.2d at 86. There the plaintiff testified by affidavit that the defendant had assigned to its black drivers a disproportionate amount of heavy loads to be moved by hand, while reserving easier work and motorized equipment for whites and that he had complained about the unequal allocation of work to the union and the company. He further testified that the charge on which he was released was one of several citations issued in retaliation for his complaints about discriminatory work assignments. Reversing summary judgment for the defendant, the court stated, "[t]he factual issues raised around the validity of the citations and [the defendant's] motive in issuing them are unresolved by the observation that [the plaintiff] was replaced by a black." *Id.* at 87. In *Cockrham,* the district court, adopting the recommendation of the magistrate, dismissed all charges "because [the plaintiff] had failed to show that [the defendant] filled his position with a non-minority." 695 F.2d at 144. In reversing, the court held that a showing that the plaintiff was reprimanded, given unsatisfactory evaluations and eventually fired for reasons for which white employees were neither disciplined nor discharged "established a prima facie case of discriminatory discharge due to unequal discipline ... notwithstanding the race of his replacement." *Id.* at 145 (citations omitted). The discriminatory administration of a polygraph test in this case is indistinguishable from the retaliatory charges and unequal discipline in *Byrd* and *Cockrham,* for all

three constitute pre-discharge discriminatory practices raising a dispute as to the defendants' discriminatory motive. In this case, as in the two Fifth Circuit cases, the hiring of another black does nothing to resolve this dispute. On this record, we conclude that genuine issues of material fact exist and that the district court erred in granting summary judgment merely because Roadway Express has not turned down all black applicants.

Our conclusion is supported by the opinion in *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), a disparate impact case in which the Supreme Court struck down a racially discriminatory promotion examination notwithstanding the fact that the ultimate result of the promotional process was an appropriate racial balance. Dismissing the contention that a non-discriminatory "bottom line" may be a defense to a claim of discrimination against an individual employee, the Court pointed out that "a non-discriminatory 'bottom line' and an employer's good faith efforts to achieve a non-discriminatory work force, might in some cases assist an employer in rebutting the inference that particular action had been intentionally discriminatory." *Id.* at 2535. The Court continued, "[b]ut resolution of the factual question of intent is not what is at issue in this case .... Under Title VII, 'a racially balanced work force cannot immunize an employer from liability for specific acts of discrimination.'" *Id.* (citation omitted). The Court concluded, "[i]t is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Id.* From these statements, it is evident that our adopting the lower court's reasoning would contravene Title VII's purpose of guaranteeing individuals, as opposed to groups, equal employment opportunity.

### V. COURT COSTS AND ATTORNEY'S FEES

■ Under section 706(k) of Title VII, "the court, in its discretion, may allow *the prevailing party* ... a reasonable attorney's fee as part of the costs ...." 42 U.S.C. § 2000e–5(k) (emphasis added). Insofar as the district court erred in dismissing Howard's action on motion for summary judgment, Roadway Express does not constitute a "prevailing party" for the purpose of awarding costs and fees. Although partial summary judgment with respect to Howard's claim for damages under section 1981 was appropriate, the elimination of one theory of recovery from an action otherwise surviving summary judgment hardly constitutes a victory entitling the defendant to repayment of litigation expenses. Therefore, we vacate the award of costs and fees to Roadway Express.

For the foregoing reasons, the judgment of the district court is REVERSED AND REMANDED.