**James E. GRANT, Plaintiff,**

v.

**BULLOCK COUNTY BOARD OF EDUCATION, et al.,**
**Defendants.**

**Civ. A. No. 94–D–844–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 6, 1995.

James E. Grant, Montgomery, AL, pro se.

Sandra Lewis, Willie Troy Massey, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the defendants' motion filed January 4, 1995 to dismiss the complaint and/or for summary judgment.[1] Also before the court is the plaintiff's motion for summary judgment filed January 17, 1995 and amended on February 14, 1995. In ruling on these motions, the court has considered the parties' respective briefs, as well the replies and surreplies thereto.

---

1. When the movant submits a 12(b)(6) motion to dismiss, as here, and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b). Because the court has considered matters outside the pleadings, it will treat the defendants' motion as one for summary judgment.

Because the parties' motions involve similar issues and arise from the same set of facts, the court will consolidate the motions and address them simultaneously. After careful consideration of the arguments of the parties, the relevant case law and the record as a whole, the court finds that the defendants' motion is due to be granted in part and denied in part and that the plaintiff's motion is due to be denied.

## JURISDICTION

Based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Importantly, the court must refrain from deciding material factual issues but, rather, must decide whether such factual issues exist and, if not, whether the party moving for summary judgment is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987).

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

## FINDINGS OF FACT

Plaintiff James E. Grant (hereafter "plaintiff"), who is proceeding *pro se*, commenced this action on July 6, 1994. The plaintiff asserts that based on his sex, the defendants denied him an employment opportunity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. It is undisputed that the plaintiff applied for and was refused the position of high school counselor at Bullock County High School and that the Bullock County Board of Education ultimately awarded the position to Meharry Lewis, a male. Pretrial Order at ¶ 5.

In addition, the plaintiff alleges a deprivation of constitutional rights secured by the equal protection and due process clauses of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment. Finally, the plaintiff contends that the defendants entered into a conspiracy to violate his constitutional rights.[2] Pl.'s Compl. at ¶ 4.

---

**2.** While the allegations in the complaint are somewhat muddled, the court recognizes that *pro se* complaints are subject "... 'to less stringent standards than formal pleadings drafted by law-

yers....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). Accordingly, the court generously has construed in favor of the plaintiff the allegations contained

The plaintiff has sued the following defendants: Lee Ballard, in his capacity as assistant superintendent; Feagin Johnson, Jr., in his capacity as the former superintendent; Benjamin Johnson, in his capacity as principal of Bullock County High School; Meharry Lewis, in his capacity as an employee of the Bullock County Board of Education; and the members of the Bullock County Board of Education—Mary Jackson, Henry C. Davis, John L. Rumph, Rosa Henry and David Lowe. The specific factual allegations set forth in the complaint are as follows:

> On or about August 5, 1993, James E. Grant, a black male, was refused/denied a promotion by a selection committee comprised of Lee Ballard, Feagin Johnson, [Jr.] and [Benjamin] Johnson. The Bullock County Board of Education refused to hire Mr. James Grant even after the three [female] individuals ranked ahead of Mr. Grant eventually found suitable employment.
>
> Over the past years, the Bullock County Board of Education seemingly has used the "Spoils System." The job was not re[-]advertised, and an applicant whose name was not listed ahead of Mr. Grant was hired.

*Id.* at ¶ 9 (brackets supplied).

In 1969, the plaintiff began his career with the Bullock County Board of Education as an elementary school teacher at Bullock County Tech.[3] Pl.'s Dep. at 15–16. There, the plaintiff taught fourth and fifth grades, as well as special education classes. *Id.* at 20. After six years at Bullock County Tech, the plaintiff transferred to Bullock County High School where he taught special education classes for "thirteen or fourteen" years.[4] *Id.* at 20–21.

Thereafter, the plaintiff applied for and was offered a counselor position at South Highland Middle School, which later was converted to an elementary school. *Id.* at 22–23.

He has served in this position for approximately six years. *Id.* at 24. His present job responsibilities include individual and group counseling for students seeking academic instruction and assistance for emotional difficulties. *Id.* at 25–26.

This action erupted, in part, when the plaintiff applied but was rejected for the position of high school counselor at Bullock County High School. The plaintiff became aware of the opening through a job bulletin posted in the teacher's lounge of the school where he currently works. *Id.* at 29–30. As required, the plaintiff submitted an application to Superintendent Feagin Johnson, Jr. before the May 28, 1993 deadline.[5] Pretrial Order at ¶ 5; *see also* Pl.'s Am.Mot.Summ. J., Ex. S attached thereto.

Three females and the plaintiff applied for the position. A selection committee—comprised of Lee Ballard (assistant superintendent), Feagin Johnson, Jr. (former superintendent) and Benjamin Johnson (principal of Bullock County High School)—assessed the applicants' qualifications and made recommendations for employment subject to the approval of the Bullock County Board of Education. Pretrial Order at ¶ 5. The selection committee appraised the plaintiff as least qualified and ranked the applicants in the following numerical order: (1) Jennifer Washington; (2) Mildred Buford; (3) Linda Jordan; and (4) the plaintiff. *Id.*

The plaintiff's educational qualifications include a bachelor's degree, as well as a master's degree in counseling. Pl.'s Dep. at 66. In addition, the plaintiff's Teacher's Certificate issued by the State of Alabama Department of Education indicates that on July 1, 1987, the plaintiff fulfilled the requirements of a school counselor and is authorized to serve in this capacity until June 30, 1997. Pl.'s Am.Mot.Summ.J., Ex. 2 attached thereto. Moreover, the plaintiff has received "superior" evaluations throughout his career

---

therein. *See* Fed.R.Civ.P. 8(f) (providing that "[a]ll pleadings shall be so construed as to do substantial justice"); *see generally Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**3.** Bullock County Tech since has closed.

**4.** While not part of his job responsibilities, the plaintiff also provided career counseling to stu-

dents referred to him by the principal. Pl.'s Dep. at 32–33, 34.

**5.** The plaintiff considered the position a "promotion" because he would receive an eleven- or twelve-month contract rather than his present nine-month contract. Pl.'s Dep. at 31–32, 45–46.

with the Bullock County Board of Education. Pl.'s Dep. at 20.

The record does not contain the educational background of the three female applicants. Like the plaintiff, however, each has obtained certification from the State of Alabama Department of Education to serve as a school counselor.

The Bullock County Board of Education twice rejected the recommendation of Mildred Buford, hence, denying her the position.[6] Def.s' Res. to Pl.'s Mot.Summ.J, Ex. G attached thereto (Feagin Johnson, Jr.'s Aff. at 1). While both Jennifer Washington and Linda Jordan interviewed for the position in June 1993 and received offers, both declined acceptance for reasons not pertinent to this litigation. Pl.'s Mot.Summ.J., Washington and Jordan's Aff.s attached thereto. It is undisputed that the plaintiff was not offered the position.

The plaintiff has submitted a job bulletin, indicating that the Bullock County Board of Education re-announced the job vacancy for the counselor position with an application deadline of July 29, 1993. The plaintiff contends that none of the defendants notified him of the renewed application deadline and that even if the bulletin were posted in various schools, the academic year had adjourned for summer vacation. While it is undisputed that the plaintiff did not re-apply, the bulletin states that "[p]reviously submitted applications will be considered for all applicable positions." Pl.'s Am.Mot.Summ.J., Ex. R attached thereto. On September 14, 1993, the Bullock County Board of Education approved the lateral transfer of Meharry Lewis, a biology teacher, to the counselor position. *Id.* at Ex. X and Ex. Y attached thereto.

In August of 1993, the plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC"). The EEOC issued a right-to-sue letter on June 9, 1994, after which he commenced this action.

## DISCUSSION

### I. *Defendants' Motion for Summary Judgment*

#### A. Title VII: Disparate Treatment

##### 1. *Individual Capacity Suits*

■ Initially, the court raises *sua sponte* the issue of individual capacity suits under Title VII. The plaintiff seeks to hold Meharry Lewis liable in his individual capacity as a school teacher employed by the Bullock County Board of Education.[7] In the Eleventh Circuit, "[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (per curiam) (citations omitted) (emphasis in original); *see also Bahadirli v. Domino's Pizza*, 873 F.Supp. 1528, 1533 n. 2 (M.D.Ala.1995) (Albritton, J). In other words, Title VII "does not impose individual liability but only holds the employer accountable for the acts of its individual agents." *Smith v. Capitol City Club of Montgomery*, 850 F.Supp. 976, 978 (M.D.Ala.1994) (Thompson, J.).

Based upon the authority of *Busby*, it is clear that the plaintiff cannot maintain a lawsuit against Meharry Lewis in his individual capacity. Even if the court were to construe the complaint as alleging a claim against Meharry Lewis in his official capacity, such a construction would be repetitious since his employer, the Bullock County Board of Education, is properly named as a defendant.[8] *Bahadirli*, 873 F.Supp. at 1534.

---

6. The record does not reveal the reasons for the rejection of Mildred Buford.

7. After listing the defendants in the style of the complaint, the plaintiff adds in parentheses the word "individually." It is not clear if "individually" refers to all defendants or just to Meharry Lewis, who is listed last. In construing the allegations in the complaint in the light most favorable to the plaintiff, as the law requires, the court will presume that as to the Title VII claim, "indi-

vidually" refers only to Meharry Lewis and that the plaintiff has sued the remaining defendants in their official capacities.

8. The court notes that it also has concerns as to whether Meharry Lewis is an "agent" of the Bullock County Board of Education so as to bring him within Title VII's reach. Based upon *Bahadirli*, however, the court need not address this concern. *See also* 42 U.S.C. § 2000(e)(b) (defining an "employer" as "a person engaged in

Accordingly, the court finds that all Title VII claims against Meharry Lewis are due to be dismissed.

### 2. Administrative Remedies

The court finds that the plaintiff has fulfilled the two jurisdictional prerequisites for instituting a Title VII lawsuit. The plaintiff timely filed a charge with the EEOC, wherein he asserted a claim of sex discrimination. Furthermore, after receiving a right-to-sue letter from the EEOC, the plaintiff seasonably instituted this action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

### 3. Analysis

■ In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence. St. Mary's Honor Center v. Hicks, — U.S. —, —, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); see e.g., Lee v. Russell County Bd. of Educ., 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as is the case here, a plaintiff can establish intentional discrimination under the three-part burden-shifting analysis set forth in McDonnell Douglas, supra, and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the McDonnell Douglas and Burdine framework,[9] the plaintiff must first raise an inference of discrimination by establishing a prima facie case. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). To satisfy this burden in a failure-to-promote case, the plaintiff must show: (1) that he belongs to a protected class; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that an another equally or less qualified individual outside the protected class received the promotion. Batey, 24 F.3d at 1334 n. 11 (citing Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir.1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)). The plaintiff also may establish the fourth element of the prima facie case by showing that the position remained open. Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1073 (11th Cir.1995).

In alleging sex discrimination, the plaintiff is within a protected group as defined by Title VII. In addition, it is not disputed that the plaintiff submitted an application in response to the first job bulletin announcing a counselor opening at Bullock County High School. The defendants, however, contend that because the plaintiff failed to submit a second application when the Bullock County Board of Education re-announced the job vacancy, the plaintiff cannot show that he applied for the position. The court finds that the defendants cannot succeed with this argument since the second job bulletin clearly states that "all previously submitted applications will be considered for all applicable positions." Pl.'s Am.Mot.Summ.J., Ex. R attached thereto. Accordingly, the court finds that the plaintiff satisfactorily has shown that he applied for the position.

Furthermore, the court finds that the plaintiff's educational qualifications, longevity with the school system, unblemished job history and certification to serve as a high school counselor render the plaintiff qualified for the sought-after job. Moreover, it is undisputed that the Bullock County Board of Education did not offer the counselor position to the plaintiff.

Additionally, the plaintiff must show that the applicants who were offered the job were equally or less qualified than he. While the record does not indicate the selection committee's method for evaluating an applicant's qualifications, the evidence shows that the

an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...").

9. The Supreme Court of the United States adopted this analysis to implement "[t]he lan-

guage of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." McDonnell Douglas, 411 U.S. at 800, 93 S.Ct. at 1823.

plaintiff possessed more seniority than Meharry Lewis and the two female applicants who turned down the offer (Washington and Jordan). Namely, the plaintiff has worked for the Bullock County Board of Education for more than twenty-five years as compared to Meharry Lewis, who only recently began employment on August 12, 1993. Furthermore, the record shows that the plaintiff has received superior evaluations throughout his employment, and there is nothing in the record revealing that either Meharry Lewis, Washington or Jordan attained higher evaluations than the plaintiff. Accordingly, the court finds that the evidence is sufficient to create factual issues as to whether the plaintiff is at least equally as qualified as those who were offered the position.

The defendants strenuously argue that the plaintiff cannot survive summary judgment because ultimately a male filled the position for which the plaintiff applied. At first glance, it appears that the defendants are correct, as the Court of Appeals for the Eleventh Circuit recently has emphasized that a plaintiff cannot make out a prima facie case if he or she does not establish that the position was *in fact* "awarded to a person of a non-protected class." *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994). For the following reasons, the court disagrees with the defendants' argument.

While the defendants eventually hired a protected group member, i.e., a male, the court finds that *Green* does not prevent the plaintiff from prevailing on an assertion that the position remained open after the plaintiff's rejection. *See Coutu, supra* at 1500. In *Green,* the plaintiff was employed as a substitute food service worker and sought a permanent full-time position. The plaintiff's employer denied her the position and instead hired another substitute worker. Thereafter, the plaintiff filed a charge of national origin discrimination with the EEOC, claiming that her employer discriminated against her because she is of East Indian descent. The EEOC denied the charge, and the plain-

tiff commenced a Title VII lawsuit. Because the evidence at trial did not reveal the successful applicant's national origin, the Eleventh Circuit held that the trial court erred in finding that the plaintiff had established a prima facie case of discrimination.

A pivotal distinction between *Green* and the instant case is that here the defendants rejected the plaintiff while offering the job to individuals outside the plaintiff's protected class. In fact, the defendants did not reannounce the job vacancy until after the possibility of hiring a female had been exhausted. Arguably, the defendants' decision to reopen the application period and seek more candidates infers that they were pursuing the application of more females. This inference is bolstered by the fact that the plaintiff timely applied and appears to have been qualified for the position.

Moreover, in *Edwards v. Wallace Community College,* 49 F.3d 1517 (11th Cir.1995), the Eleventh Circuit noted that in some instances, a plaintiff may prevail even though the employer hires an individual within the same protected group as the plaintiff. The Eleventh Circuit then enunciated several factors that other courts have considered in determining "whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff." [10] *Id.* at 1521. As indicated in *Edwards,* the court may consider whether the hiring of the protected group member occurred prior to or after the filing of the EEO complaint, the time duration between the plaintiff's rejection and the employer's hiring decision and "if the hired person had a history with the employer, whether it was a positive history." *Id.* (citations omitted).

For instance, in *Howard v. Roadway Express, Inc.,* 726 F.2d 1529, 1534 (11th Cir. 1984), the Eleventh Circuit held that the employer's hiring of a member of the plaintiff's protected group "only after [the plaintiff] had filed a charge with the EEOC suggests that the hiring might have been motivated by the filing. The hiring, then, would

---

**10.** While *Edwards* involved allegations of a racially discriminatory discharge, the court finds that the listed factors are equally applicable to a

failure-to-promote case based upon sex discrimination.

scarcely rule out the inference of discrimination in connection with the earlier denial of [the plaintiff's] application." Likewise, the plaintiff here filed a charge of sex discrimination with the EEOC *prior* to the ultimate award of the counselor position to Meharry Lewis.

At the same time, the court recognizes that in *Howard*, the Eleventh Circuit stated that a prolonged delay between the rejection of a member of a protected group and the hiring of another can decrease "the reliability of the subsequent hiring as an indicator of [the employer's] intent at the time it rejected [the plaintiff's] application." *Id.* In the case *sub judice*, the hiring of Meharry Lewis occurred within a short time frame, i.e., less than two months after the plaintiff's rejection. Nonetheless, the defendants offered the position to a male almost immediately after the plaintiff filed a charge of discrimination with the EEOC. Arguably, a discriminatory inference that can be extracted is that after receiving notice of the pending charges with the EEOC, the Bullock County Board of Education hired a male in an attempt to avoid liability for sex discrimination and possibility fall within the holding of *Green*, discussed *supra*.

■ Moreover, the final *Edwards'* factor is not particularly germane here, as Meharry Lewis' tenure with the school system was so brief on the date he was offered the counselor position. In sum, the court finds that the *Edwards* factors considered in combination with the plaintiff's satisfaction of the first three elements of the prima facie case are enough to overcome summary judgment at this juncture.

Accordingly, the burden now shifts to the defendants to "articulate some legitimate, nondiscriminatory reason" for its decision.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Here, the defendants' rationale for rejecting the plaintiff is two-fold: First, the defendants assert that the plaintiff did not re-apply when the Bullock County Board of Education re-announced the position. The court already has rejected the failure-to-apply argument, *supra*, and need not repeat that discussion here. Second, the defendants assert that the plaintiff was not the most qualified.[11] The court finds that the latter reason satisfies the defendants' "exceedingly light" burden. *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983).

Once a defendant satisfies its burden of production, "the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether plaintiff has proven that the employer intentionally discriminated against him because of his race." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir.1994) (*citing St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2749). Here, the court finds that whether or not the defendants acted with a discriminatory motive is a factual issue more appropriate for decision by the trier of fact at a trial on the merits. Hence, in viewing all factual inferences in favor of the plaintiff and applying the *Edwards* factors, the court finds that genuine issues of material fact exists as to whether the defendants intentionally discriminated against him by continuing to seek applications after rejecting the plaintiff.

### B.  42 U.S.C. § 1983 Constitutional Claims

■ The plaintiff also contends that the defendants violated his rights under the Eighth Amendment and the Fourteenth

---

11. The defendants further assert that while they did not award the plaintiff the Bullock County High School counselor position, they later offered him a ten-month counselor sex equity position at Merritt Elementary School, which paid a higher salary than the counselor position at issue. According to the defendants, the plaintiff initially rejected the offer but later decided to accept the position. By that time, however, the counselor sex equity position had been filled.

Def.s' Res. to Pl.'s Mot.Summ.J, Ex. G attached thereto (Feagin Johnson, Jr.'s Aff. at 1).

The court is not convinced, however, that denying the plaintiff the position for which he applied but offering him another position for which he did not apply eliminates all inferences of sex discrimination. Rather, the court finds that the defendants' assertion may be relevant in considering mitigation of damages.

Amendment.[12] Section 1983 of Title 42 is the vehicle through which an individual may seek redress for deprivations of rights established under the Constitution.[13] To establish a cognizable claim under § 1983, the plaintiff must establish two elements: (1) that a person "acting under color of law" caused the deprivation of a federal right, either by an act or omission; and (2) that he or she suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States. *Wideman v. Shallowford Community Hosp.*, 826 F.2d 1030, 1031 (11th Cir.1987) (citations omitted). The court first will address the second prong of whether an "underlying constitutional violation" exists. *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir.1989).

### 1. The Eighth Amendment's Prohibition Against Cruel and Unusual Punishment

■ The plaintiff asserts that the defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits inordinately high bail, excessive fines for criminal offenses and the infliction of cruel and unusual punishment.[14] In defining the parameters of the Eighth Amendment, the Supreme Court of the United States traditionally has restricted its proscriptions to criminal defendants:

> Bail, fines and punishment have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of

government. An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.

*Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408–09, 51 L.Ed.2d 711 (1977).[15] The court's independent research reveals that the only cases where courts have extended the Eighth Amendment boundaries beyond application to convicted criminals involve pretrial detainees and the mentally disabled. *See Wheeler v. Glass*, 473 F.2d 983 (7th Cir.1973); *Rhem v. Malcolm*, 507 F.2d 333 (2d Cir.1974).

As grounds for his claim, the plaintiff asserts that his telephone was removed and his office accommodations reduced. The plaintiff also has provided photographs and measurements of his former office space as compared to his new accommodations. The court, however, has not discovered authority, nor have the parties provided any, where allegedly intolerable working conditions amount to cruel and unusual punishment in violation of the Eighth Amendment.

The court, however, need not decide whether the Eighth Amendment extends to the employer-employee relationship. While the court does not condone disparaging treatment in the work environment, if that indeed is the case here, the facts alleged simply are insufficient to rise to a level of cruel and unusual punishment under any circumstance. Accordingly, the court finds that the defendants' motion to dismiss and/or for summary judgment as to the plaintiff's Eighth Amendment claim is due to be granted.[16]

---

**12.** The Eighth Amendment, of course, is applicable to the states through the Fourteenth Amendment.

**13.** While the Fourteenth Amendment establishes binding standards of conduct for state and local governments, it does not authorize remedies when its provisions are breached. Section 1983 fulfills this void. *See Quern v. Jordan*, 440 U.S. 332, 351, 99 S.Ct. 1139, 1150, 59 L.Ed.2d 358 (1979) (Brennan, J., concurring) (stating that Congress enacted § 1983 pursuant to its power under § 5 of the Fourteenth Amendment).

**14.** The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted."

**15.** The *Ingraham* court refused to apply the Eighth Amendment to disciplinary paddling of school children.

**16.** An additional reason exists for granting summary judgment as to this claim. The plaintiff's unsworn statement, *supra*, is not properly before the court for consideration on the motion for summary judgment. Rather, the plaintiff must come forward with affidavits or other evidentiary matter sufficient to show a genuine issue of material fact. *See* Fed.R.Civ.P. 56.

### 2. The Fourteenth Amendment's Guarantee of Equal Protection

■ The Equal Protection Clause of the Fourteenth Amendment guarantees to each individual the right to equal treatment in the exercise of his or her fundamental rights and the right to be free from classifications based on impermissible criteria. *See Johnson v. City of Tarpon Springs*, 758 F.Supp. 1473 (M.D.Fla.1991); *see also Bass v. City of Albany*, 968 F.2d 1067, 1070 (11th Cir.1992).

The plaintiff asserts that the defendants' failure to follow established procedures for seeking and selecting employment applicants deprived him of his rights secured by the Equal Protection Clause of the Fourteenth Amendment. The plaintiff's claim appears to be more in the nature of a procedural due process claim, because his argument focuses on the fairness of the method used by the defendants in filling job vacancies not the underlying constitutionality of a policy.

■ In any case, the plaintiff's claim fails scrutiny under the equal protection analysis. There is no evidence of other similarly situated persons who were treated differently, nor is there evidence demonstrating that the defendants' procedure for selecting applicants unfairly classified all males. *See Wulf v. City of Wichita*, 644 F.Supp. 1211 (D.Kan. 1986), *aff'd in part and rev'd in part*, 883 F.2d 842 (1989) (stating that "[t]he Equal Protection Clause only guarantees like treatment to persons similarly situated") (citing *Rostker v. Goldberg*, 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981)).

In fact, the plaintiff's only basis for an equal protection claim is an unsupported allegation that he has suffered "unfair treatment." *See Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir.1990) (conclusory allegations cannot not defeat summary judgment). Because there is insufficient evidence from which a genuine issue of material fact may arise, the court finds that the defendants' motion to dismiss and/or for summary judgment as to the plaintiff's claim alleging a violation of the Equal Protection Clause is due to be granted.

### 3. The Fourteenth Amendment's Guarantee of Due Process of Law

The Due Process Clause of the Fourteenth Amendment provides two types of constitutional protection: procedural due process and substantive due process. "A violation of either ... may form the basis of a suit under section 1983." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir.1994). Though the complaint is unclear, the plaintiff may be alleging violations of both substantive and procedural due process. Therefore, the court will address both.

#### a. Substantive Due Process

■ To the extent the plaintiff alleges a substantive due process right, the court finds that the claim is barred by *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994) (*en banc*). In *McKinney*, the Osceola County Board of County Commissioners ("the Board"), after conducting three days of hearings, terminated McKinney from his position as the Osceola County Building Official. McKinney then brought suit against the Board under 42 U.S.C. § 1983 alleging that the various charges brought against him were pretextual and that his termination denied him substantive due process under the Fourteenth Amendment. The court determined that

> areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

*McKinney*, 20 F.3d at 1556. The court explained that Supreme Court precedent demonstrates that because McKinney's "employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection," but are entitled only to

"the procedural component of the Due Process Clause." *Id.* at 1559. The court then held that McKinney's claim implicates only procedural—and not substantive—due process protection.[17]

The court further held that substantive due process rights differ from procedural due process rights in the manner in which a violation of those rights occur:

> A violation of a substantive due process right, for instance, is complete when it occurs; hence, the availability *vel non* of an adequate post-deprivation state remedy is irrelevant. Because the right is "fundamental," no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

*Id.* at 1557.

Here, the plaintiff has alleged that the defendants failed to notify him of the renewed application deadline and that the defendants' method of selecting applicants for vacancies is tainted with discrimination. The court finds that the plaintiff's allegations of substantive due process relate solely to public employment law.

In *McKinney,* the court held that public employment law "remain[s] largely outside the scope of substantive due process jurisprudence." *Id.* at 1556. Based on the holding of the Eleventh Circuit in *McKinney,* the court finds that summary judgment in favor of the defendant is due to be granted as to the plaintiff's claim that the defendants violated his right of substantive due process.

### b. Procedural Due Process

As already stated, the plaintiff challenges the fairness of the procedures used to fill the vacancy for the counselor position at Bullock County High School. To establish a deprivation of procedural due process, the plaintiff must establish that he holds a constitutionally protected interest in life, liberty, or property, that there has been a governmental deprivation of that interest, and that the procedures accompanying the deprivation were constitutionally inadequate. *Faucher v. Rodziewicz,* 891 F.2d 864, 869 (11th Cir. 1990).

At the outset, the court stresses that a public employee does not possess a property right to a promotion and, thus, is foreclosed from claiming a constitutional right to any type of hearing upon a non-promotion decision. *Schwartz v. Thompson,* 497 F.2d 430, 432 (2d Cir.1974). Here, the basis of the plaintiff's procedural due process claim, as already discussed, hinges upon the denial of a fair opportunity to achieve a promotion. The plaintiff, however, has not provided the court with a statute, regulation, internal policy or rule, or a historical promotion pattern sufficient to support a claim of entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 578 n. 16, 92 S.Ct. 2701, 2710 n. 16, 33 L.Ed.2d 548 (1972). Accordingly, the court finds that the plaintiff's procedural due process claim must fail.

### C. An Alleged Conspiracy in Violation of 42 U.S.C. § 1985(3)

To state a claim for a conspiracy in violation of 42 U.S.C. § 1985(3), the complaint must assert (1) that one or more individuals conspired to deprive another of the protection of the laws or of equal privileges and immunities of the law and (2) that one or more of the alleged conspirators committed an act in furtherance of the object of the conspiracy, whereby another suffered injury or was deprived of exercising any right or privilege of a United States citizen. *See Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Because the court has found that summary judgment in favor of the defendants is due to be entered as to all of the underlying constitutional violations, the court need not ad-

---

**17.** With its holding in *McKinney,* the Eleventh Circuit overruled ten years of precedent in this circuit. In so doing, the court stated "[t]oday, we return this circuit's due process jurisprudence to a proper footing...." 20 F.3d at 1553.

dress the conspiracy claim. It is worth mentioning, however, that an additional reason exists for granting summary judgment as to the conspiracy claims.

While the complaint broadly alleges that the defendants conspired to deny him the position of high school counselor, the complaint fails to allege any acts in furtherance of the object of the conspiracy or any agreement on the part of the alleged conspirators. In *Fullman v. Graddick*, 739 F.2d 553 (11th Cir.1984), the court held:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may be justifiably dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . .

*Id.* at 557 (citations omitted). Based upon the authority of *Fullman*, which is binding on the court, the court finds that the plaintiff has not pleaded the conspiracy allegations with sufficient specificity. For the foregoing reasons, the court finds that the defendants' motion as to the plaintiff's § 1985(3) conspiracy claim is due to be granted.

### II. *Plaintiff's Motion for Summary Judgment*

The plaintiff also has filed a motion requesting the court to grant summary judgment as to each claim asserted in the complaint. In finding that the defendants' motion for summary judgment is due to be granted as to all counts except the plaintiff's Title VII claim, the court need only address the plaintiff's motion as it relates to the Title VII claim. For the same reasons previously articulated herein, the court finds that genuine issues of material fact exist, thus precluding the grant of summary judgment in the plaintiff's favor.

### CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED that the defendants' motion for summary judgment as to the plaintiff's Title VII disparate treatment claim be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that the defendant Meharry Lewis be and the same is hereby DISMISSED with PREJUDICE as a defendant in this action.

It is further CONSIDERED and ORDERED that defendants' motion for summary judgment as to the plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that the plaintiff's motion for summary judgment be and the same is hereby DENIED.