Bibi A. GREEN, Plaintiff–Appellee, Cross–Appellant,

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA, Defendant–Appellant, Cross–Appellee.

No. 92–2424.

United States Court of Appeals, Eleventh Circuit.

July 12, 1994.

tion.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Tampa, FL, for appellant.

Bibi A. Green, pro se.

Frank E. Hamilton, Jr., Frank E. Hamilton, III, Tampa, FL, for appellee.

Before COX and DUBINA Circuit Judges, and CLARK, Senior Circuit Judge.

DUBINA, Circuit Judge:

The School Board of Hillsborough County, Florida ("the school board") appeals the district court's order denying its Fed.R.Civ.P. 41(b) motion to involuntarily dismiss Appellee Bibi Green's claim that the school board discriminated against Green on the basis of her color or national origin in violation of Title VII of the Civil Rights Act of 1964. The school board also appeals the district court's order awarding Green $6,000 in attorney fees. Green cross-appeals the district court's denial of her claim for front and back pay. Because we hold that the district court's order denying the school board's Rule 41(b) motion to dismiss was in error, we reverse.

### I. Factual Background

Bibi Green ("Green"), a female of East Indian descent, was born and raised in Georgetown, Guyana, South America. From approximately April 1982 until March 1987, Green was employed by the school board as a substitute food service worker.

To become a substitute food service worker, one must apply to the school board's Personnel Department, pass a physical, and have the equivalent of a ninth grade education. Once approved by the Personnel Department, a substitute food service worker is placed on a list of available substitutes. Whenever the Food Service Manager at any of the schools in the school district needs a substitute, the manager can call one from the list. During her tenure as a substitute food service worker, Green worked at several different schools in the school district.

To become a full-time food service assistant, in addition to applying to the Personnel Department, passing a physical, and possessing a ninth grade education, one also must be hired by the Food Service Manager at a particular school with the advice and consent of that school's principal. Throughout her service as a substitute, Green unsuccessfully sought to become a full-time food service assistant. In December 1986, while working as a substitute at Sligh Junior High School ("Sligh"), Green asked Julia Green, the Food Service Manager at Sligh, to consider her for an open position as a full-time food service assistant.

Julia Green did not hire Green, but hired another substitute, Ann Rodriguez, instead. Upon learning of this decision, Green angrily confronted Julia Green and a heated argument ensued, during which Green claims that Julia Green called her a "Cuban refugee." At trial, this allegation was denied by Julia Green and was not corroborated by any other witnesses. The district court did not make any findings as to whether or not Julia Green actually made the remark.

### II. Procedural History

Shortly after the December 1986 incident at Sligh, Green filed a charge of national origin discrimination with the Equal Employment Opportunity Commission ("EEOC"). Green subsequently received a right to sue letter and filed suit in the district court, claiming that the school board violated Title VII, 42 U.S.C.A. § 2000e, *et seq.* (West 1982 & Supp.1994).

The district court conducted a bench trial. Both at the close of Green's evidence and again at the close of all the evidence, the school board moved to dismiss pursuant to Fed.R.Civ.P. 41(b) on the ground that Green had failed to prove a prima facie case of discrimination. Both motions were denied. The district court held that Green established a prima facie case, that the school board's stated reasons for not hiring Green were pretextual, and thus that the school board violated Title VII by denying Green a position as a full time food service assistant on the basis of her color and national origin. However, the district court awarded Green only nominal damages of $1.00 because of her failure to prove her entitlement to any back or front pay. The court also found that Green was a prevailing party and suggested that the parties reach a settlement regarding attorney fees.

The school board filed a motion to reconsider the district court's judgment. While this motion was pending, the school board and Green entered a stipulation that a reasonable attorney fee would be $6,000. This stipulation was without prejudice to the school board's motion to reconsider and any appeal. The district court denied the motion to reconsider and ordered the school board to pay $6,000 in attorney fees pursuant to the stipulation. The school board then timely perfected this appeal, claiming that the district court erred in denying its Fed.R.Civ.P. 41(b) motion to dismiss and in awarding Green attorney fees when she received only nominal damages.

Prior to the school board's motion for reconsideration, Green also filed an appeal in this case. By order of this court, Green's appeal, which claims that the district court erred in denying her damages for front and back pay, was docketed as a cross-appeal.

Because we hold that the district court erred in denying the school board's Rule 41(b) motion to dismiss, we need not consider Green's entitlement to attorney fees or front and back pay.

### III. Standard of Review

When this case was tried, Rule 41(b) provided for involuntary dismissal of causes tried without a jury when the court found the plaintiff's evidence to be legally insufficient.[1] "Our task when reviewing a Rule 41(b) dismissal—and particularly our standard of review—is dictated by the unique characteristics of that rule." *Caro–Galvan v. Curtis Richardson, Inc.,* 993 F.2d 1500, 1503 (11th Cir.1993).

> [D]espite the fact that a Rule 41(b) dismissal occurs in the middle of the trial, it is treated for standard of proof purposes as if it were a final adjudication at the end of trial. Accordingly, '[t]he usual standards applicable to review of a judgment on the merits in a nonjury case are controlling.'

*Id.* at 1504 (citations omitted).

A finding of intentional discrimination is a finding of fact that can be reversed on appeal only if clearly erroneous. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). "The 'clearly erroneous' standard of review requires substantial deference to the findings of the district court, but '[o]ur deference to the district court is not unlimited, ... and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it.'" *Id., quoting, Lincoln v. Board of Regents,* 697 F.2d 928, 939 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983).

### IV. Analysis

The ultimate issue in any Title VII disparate treatment suit is the factual ques-

---

1. As of December 1, 1991, a motion to dismiss on the ground that a plaintiff's evidence is legally insufficient should be treated as a motion for judgment on partial findings as provided in Rule 52(c), which states:

 (c) Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judg-

 ment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

tion of whether the defendant intentionally discriminated against the plaintiff on any of several impermissible bases. Throughout the litigation, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In this case, the question is whether the school board intentionally discriminated against Green on the basis of her color or national origin.

■ Intentional discrimination can be proved by either direct or circumstantial evidence. When a plaintiff's evidence is circumstantial, the Supreme Court has developed a three stage framework for focusing the inquiry. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Burdine,* 450 U.S. at 252–253, 101 S.Ct. at 1093–1094. First, the plaintiff must create an inference of discrimination by establishing a prima facie case by a preponderance of the evidence. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. A plaintiff establishes a prima facie case by proving that (i) she is a member of a protected class, (ii) she applied and was qualified for a job for which the defendant was seeking applicants, (iii) despite her qualifications, she was rejected, and (iv) the defendant gave the position to a person who was not a member of a protected class. *McDonnell Douglas,* 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13; *Nix,* 738 F.2d at 1185; *Krieg v. Paul Revere Life Ins. Co.,* 718 F.2d 998, 999 (11th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984). Second, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employee's rejection. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Finally, the plaintiff must have an opportunity to show by a preponderance of the evidence that the defendant's stated reasons are pretexts for discrimination and to present other evidence of discriminatory intent. *Id.*

■ This *McDonnell Douglas–Burdine* burden shifting analysis is not meant to be "rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *U.S. Postal Service Bd. of Governors. v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), *quoting, Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Once the district court denies the defendant's motion to dismiss an action for lack of a prima facie case and the action has been fully tried, it is no longer relevant whether the plaintiff actually established a prima facie case. *Aikens,* 460 U.S. at 714–715, 103 S.Ct. at 1481–1482. At that point, the only relevant inquiry is the ultimate, factual issue of intentional discrimination. *Id.* Thus, the district court's refusal to grant the school board's motion to dismiss under Rule 41(b) is erroneous only if the district court's finding of intentional discrimination is clearly erroneous—that is, if the record lacks substantial evidence of intentional discrimination.

■ For our purposes, therefore, whether or not Green actually established a prima facie case is relevant only in the sense that a prima facie case constitutes some circumstantial evidence of intentional discrimination. After a thorough review of the record in this case, we are persuaded that Green did not establish a prima facie case, and thus cannot benefit from any inference of intentional discrimination that might have arisen therefrom.

■ Green failed to establish a prima facie case because she presented no evidence that the food service assistant position she sought was actually awarded to a member of a non-protected class. The only mention of the color or nationality of Ann Rodriguez, the successful applicant, came during closing argument when counsel for the school board responded to a question posed by the court as follows:

THE COURT: What is the race of Ann Rodriguez?

MR. GONZALEZ: It's not in the record, but I'll be glad to tell you, Your Honor. She is married to someone named Rodri-

guez and from everything we know, she is a Caucasian, sort of an American Heinz 57, not a Hispanic by any measure. But, again, that's just not—that's just an answer to the Court's question; it's not in the record on the thing....

R3–253. Green cannot rely on this inconclusive statement made by opposing counsel, during closing argument, and in response to a question posed by the court to establish a prima facie case. Statements made by counsel in the course of closing arguments are not evidence. *Liner v. J.B. Talley and Co., Inc.,* 618 F.2d 327, 330 (5th Cir.1980).[2] This is especially true where the precise issue on appeal is whether the action should have been dismissed at the close of the evidence and before closing arguments. In the absence of any evidence of the color and national origin of Ann Rodriguez, the district court's findings that Ann Rodriguez is a member of a non-protected class and that Green established a prima facie case are clearly erroneous.[3] In addition, because Green failed to establish a prima facie case, the district court's ultimate finding of intentional discrimination is not supported by any inference of discrimination arising from circumstantial evidence.

Nor is the district court's finding of intentional discrimination supported by any direct evidence. The only shred of direct evidence of intentional discrimination in this case is Green's own uncorroborated testimony that Julia Green referred to her as a "Cuban refugee" during the confrontation that occurred after Green learned that she had been passed over for the position.

 In its findings of fact, the district court expressly declined to determine whether Julia Green in fact made such a remark. Instead, the court made the following finding:

I think all of us who heard Ms. [Julia] Green's testimony here in the courtroom could not avoid concluding that she does have rather strong views concerning certain classes of people, and that she regarded the plaintiff as within that class of people.

And I find that it is more likely than not that she chose Ann Rodriguez over the plaintiff in large part because of her prejudice against persons of color, who in her belief came from South America and were not genuinely Spanish.

R3–258. In effect, the court found that Julia Green was prejudiced against people from South America.

After a thorough review of the record, we are persuaded that this finding is clearly erroneous. Indeed, we can find no support for it whatsoever. The court seems to have based its finding on the following exchange at trial between the court and Julia Green:

JULIA GREEN: You ask me what a Cuban wop is, I could tell you, but I ain't never heard of no Cuban refugee.

THE COURT: What is a Cuban wop?

JULIA GREEN: Anybody of Latin people born in west Tampa and raised, they called you a Cuban wop. Like years ago a lot of American people didn't associate with Latin people.

THE COURT: And a lot of the Spanish people from Spain kind of looked down on the Spanish people from Cuba, did they not?

JULIA GREEN: Yes, sir.

R3–192. The court seems to have concluded that because Julia Green is of Spanish descent and was raised in west Tampa and because Spanish people and other non-Latin people in west Tampa used to be prejudiced against Latin people, Julia Green must be prejudiced against Latin people.

---

**2.** The decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

**3.** The school board contends that Green's prima facie case is defective on the additional ground that she failed to prove by a preponderance of the evidence that she is qualified for a full-time food service assistant position. While we seriously question whether Green presented substantial evidence that she possessed the equivalent of a ninth grade education, we need not and thus decline to decide this issue.

Even giving great deference to the opportunity of the district court to observe the witness in person, we hold that the above exchange is insufficient to support the district court's finding that Julia Green is prejudiced against people from South America. The district court's finding on this point simply is not supported by substantial evidence and is clearly erroneous. Thus, our review of the record on appeal reveals no direct evidence of intentional discrimination.

## V. Conclusion

In sum, we find that the record contains no direct or indirect evidence that the school board intentionally discriminated against Green on the basis of her color or national origin. Accordingly, the district court's finding of intentional discrimination is clearly erroneous, and the district court erred in denying the school board's Rule 41(b) motion for involuntary dismissal. The judgment of the district court is reversed and judgment hereby rendered for the school board.[4]

REVERSED and RENDERED.

---

4. Because we hold that the school board's Rule 41(b) motion for involuntary dismissal should have been granted, we need not reach the issues of damages and attorney fees.