**Robert MOORE, et al., Plaintiffs,**

v.

**STATE OF ALABAMA,
et al., Defendants.**

**Civil Action No. 96–D–652–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 25, 1997.

Charles M. Quinn, Gregory O. Wiggins, Birmingham, AL, for Plaintiffs.

Ellen R. Leonard, Andrew W. Redd, Albert S. Butler, Ala. Dept. of Corrections, Legal Div., R. Frank Ussery, State Person-

nel Dept., William F. Gardner, R. Taylor Abbott, Birmingham, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Pending before the Court are defendants' motions for summary judgment. Defendants Alabama State Personnel Board ("SPB"), Alabama State Personnel Department ("SPD") and Dr. Halcyon Vance Ballard ("Ballard"), Director of the SPD, (collectively "personnel defendants") filed their motion for summary judgment on June 3, 1997. Defendants State of Alabama, State of Alabama Department of Corrections ("ADOC"), Governor Forrest H. "Fob" James ("Governor"), Childersburg Community Work Center ("CCWC") and Ron Jones ("Jones,")[1], (collectively the "ADOC defendants") filed their motion for summary judgment on May 29, 1997. On August 1, 1997, plaintiffs filed their response to defendants' motions for summary judgment. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole the Court finds that defendants' motions are due be granted.

### JURISDICTION

The Court has subject-matter jurisdiction in this cause pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-5(f)(3). The parties do not contest personal jurisdiction or venue.

### BACKGROUND

This case began as three separate actions. On April 17, 1996, the plaintiffs, Robert Moore ("Moore"), John Winston ("Winston") and Willie Kelly ("Kelly"), each filed suit against the above-named defendants. On May 3, 1996, the Court found that the cases involved common questions of law and fact and consolidated the three cases.

All three plaintiffs are black men and former employees of the ADOC. Specifically,

all three were employed at CCWC. Winston was Director of CCWC and held the title of Deputy Warden. Moore was a Correctional Officer Supervisor II or Captain. Kelly was a Correctional Officer Supervisor I or Lieutenant.

CCWC is a boot-camp style alternative to traditional penal incarceration. CCWC houses two types of prisoners: first-time offenders known as Disciplinary Recruits or D.R.'s and minimum security regular convicts. D.R.'s participate in a rigorous, highly regimented, short-term program designed to instill discipline and modify the D.R.'s behavior. Shortly after arriving at CCWC, D.R.'s experience something known as "shock day." During "shock day" D.R.'s are required to perform strenuous physical activity and subjected to strident verbal instruction in an effort to break down negative behavior patterns and to begin instilling discipline and respect for authority.

During a "shock day" in May 1993, a D.R. collapsed and subsequently died. In the investigation that ensued, allegations were made that during "shock days," D.R.'s were frequently subjected to verbal and physical abuse. It was further alleged that the plaintiffs had witnessed such abuse but had failed to either report it or take corrective action. The plaintiffs denied ever witnessing such abuse.

As a result of this investigation the plaintiffs were sent notices of dismissal. The notices recited plaintiffs' failure to report the abuse or take corrective action as the reason for dismissal.[2] The plaintiffs appealed their dismissals and a hearing was held. The hearing officer recommended that the dismissals be upheld, and upon this recommendation, the SPB upheld the dismissals.

In their complaints, plaintiffs allege that the defendants harassed and threatened them in an effort to coerce them into giving false testimony about the alleged abuse. The plaintiffs contend that because they refused to submit to this harassment, the defendants

---

1. Apparently, Jones serves in some official capacity within the ADOC, but, from the pleadings and evidence the parties have submitted, the Court cannot discern what that capacity may be.

2. Specifically, the notices stated that plaintiffs had violated ADOC Administrative Regulations 207 and 208.

retaliated by terminating them. Compls. ¶ 13. Plaintiffs, also contend that they were discriminated against on the basis of their race. Compls. ¶¶ 14–15. According to the plaintiffs, similarly situated white employees were not discharged. Compls. ¶ 14. Plaintiffs assert that defendants' actions violated their rights under Title VII, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.[3]

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.; see also Anderson*, 477 U.S. at 249.

## DISCUSSION

As a preliminary matter, the Court notes that the plaintiffs and personnel defendants filed a "joint motion to re-classify the personnel defendants as Rule 19 parties" on July 28, 1997. In this motion the parties ask the Court to "dismiss with prejudice the substantive claims and causes of action asserted

---

3. As 42 U.S.C. § 1983 does not provide plaintiffs with any substantive rights but instead, is a mechanism for enforcing plaintiffs' federal constitutional and/or statutory rights, the Court assumes that plaintiffs' claim is that their rights under the Equal Protection Clause of the Fourteenth Amendment have been violated and they seek to vindicate these rights through 42 U.S.C. § 1983.

against the Personnel defendants, subject to the qualification that the Personnel defendants are to remain in the lawsuit as Rule 19 parties only." The Court interprets this motion as an agreement between the parties that the plaintiffs have no viable claims against the personnel defendants. After reviewing plaintiffs' claims, the Court finds that the parties are correct; the plaintiffs do not have any claims against the personnel defendants which would survive summary judgment. Furthermore, the parties have not demonstrated that the personnel defendants are "indispensable parties" within the meaning of Rule 19 nor have they cited any authority in support of their proposal to dismiss all substantive claims against these defendants yet maintain them as parties to this suit. Accordingly, the Court finds that the personnel defendants are due to be dismissed from this action.

Plaintiffs' claims against the remaining defendants turn on a relatively simple and straightforward factual premise: plaintiffs were terminated for failing to report and/or prevent D.R. abuse while other employees at CCWC who saw or participated in the abuse but failed to report and/or prevent the abuse were not terminated. Before the Court can evaluate the sufficiency of this factual premise (and the accompanying evidentiary submissions) the Court must first identify the applicable legal standards.

### Title VII

■ Although they do not specify, presumably, plaintiffs claim that defendants have violated their rights under 42 U.S.C. § 2000e–2(a). This section provides in relevant part: "It shall be an unlawful employment practice for an employer to ... discharge any individual, or otherwise discriminate against any individual ... because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). An "employer" is defined as "a person engaged in an industry affecting commerce ... and any agent of such person." 42 U.S.C. § 2000e(b). Nonetheless, it is well-settled in this Circuit that individuals may not be held liable for a violation of Title VII. *See Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1060 (11th Cir.1992) (holding that Title VII ac-

tion may not be maintained against a government employee in his official capacity); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (holding that individual capacity suits are inappropriate under Title VII); *Smith v. Capitol City Club of Montgomery,* 850 F.Supp. 976, 979 (M.D.Ala. 1994) (De Ment, J.).

Plaintiffs have not specified what claims they assert against each defendant. Therefore, the Court will assume that plaintiffs intended to press all of their claims against all of the defendants. However, as noted above, plaintiffs cannot maintain their Title VII claims against individual defendants. Therefore, plaintiffs' Title VII claims against Jones in his individual capacity are due to be dismissed.

■ A plaintiff may bring a Title VII claim against his or her employer either by naming the employer directly or by naming supervisory agents of the employer in their official capacity. *Busby,* 931 F.2d at 772. However, a plaintiff who chooses to do the former eliminates the need for the latter. That is, if a plaintiff directly names his or her employer as a defendant, any of the employer's supervisory officials also named in the complaint may be dismissed from the action. *See Marshall v. Miller,* 873 F.Supp. 628, 632 (M.D.Fla.1995). Here, plaintiffs allege that they were employed by the State of Alabama and its agency ADOC. Compls. ¶ 11. Both of these entities are named as defendants. Consequently, plaintiffs' Title VII claims against Jones and the Governor in their official capacities are due to be dismissed.

■ The critical element in every Title VII claim is discriminatory intent. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Discriminatory intent can be established through either direct or circumstantial evidence. *United States Postal Serv. Bd. of Gov. v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Because direct evidence of discriminatory intent is rare, most Title VII plaintiffs must travel through the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

**1417**

36 L.Ed.2d 668 (1973), and *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under *McDonnell Douglas* and *Burdine,* if a plaintiff can establish a prima facie case, he or she is entitled to a legal presumption that the defendant(s) acted with discriminatory intent. *Burdine,* 450 U.S. at 254; *McDonnell Douglas,* 411 U.S. at 802. The effect of this presumption is to shift to the employer the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action. *Burdine,* 450 U.S. at 254–55; *McDonnell Douglas,* 411 U.S. at 802. If the employer satisfies this burden, the presumption of discrimination disappears from the case and the plaintiff must persuade the trier of fact that the employer's real reason for the adverse employment decision was, in fact, discriminatory. *Burdine,* 450 U.S. at 253, 256.

There is no one correct formulation of what a Title VII must prove to establish a prima facie case. *See McDonnell Douglas,* 411 U.S. at 802 n. 13. The elements of a prima facie case must be adapted to fit the variety of contexts from which a claim of discrimination may arise. *See Aikens,* 460 U.S. at 715 (1983) ("The prima facie case method ... was 'never intended to be rigid, mechanistic, or ritualistic.)'" (quoting *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)); *McDonnell Douglas,* 411 U.S. at 802 n. 13; *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). In every case, however, the purpose of the prima facie case remains the same: "to focus the inquiry by eliminating 'the most common nondiscriminatory reasons' for the employer's action." *Jones v. Gerwens,* 874 F.2d 1534, 1539 (11th Cir.1989) (quoting *Burdine,* 450 U.S. at 253–54).

■ The ADOC defendants contend that plaintiffs Moore and Kelly cannot establish a prima facie case of intentional discrimination. These defendants assert that plaintiffs must prove the following elements to establish their prima facie case: (1) that they are members of a protected class; (2) that they were qualified for the position they held; (3) that they were fired; and (4) that they were replaced by a person outside the protected class. *See, e.g., Hawkins v. Ceco Corp.,* 883 F.2d 977, 982 (11th Cir.1989) (citing *Marks v. Prattco,* 607 F.2d 1153 (5th Cir.1979))[4], *cert. denied,* 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990). Defendants argue that Moore and Kelly cannot demonstrate that their position was filled by someone outside the protected class, and therefore, they cannot establish a prima facie case.

Plaintiffs respond by asserting that the Court should apply the modified prima facie standard articulated in *Jones, supra.* In *Jones,* the plaintiff alleged that he was disciplined more severely for a violation of work rules than non-minority employees who committed the same offense. 874 F.2d at 1537. The court held that the plaintiff could establish a prima facie case of discrimination by demonstrating that he was a member of a protected class and that he did not violate the work rule or that he engaged in misconduct similar to that of a person outside the protected class and the disciplinary measures enforced against him were more severe than those enforced against other persons who engaged in similar misconduct. *Id.* at 1540. (citing *Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985)).

This Court, however, has rejected the applicability of the *Jones* standard in cases such as this where the plaintiffs' claims are that they were wrongfully terminated. *See Dudley v. Wal–Mart Stores, Inc.,* 931 F.Supp. 773, 787 n. 6 (M.D.Ala.1996); *Lester v. Twitchell, a Division of Ludlow, Inc.,* 894 F.Supp. 1511, 1515 n. 6 (M.D.Ala.1995). In reaching this conclusion, the Court relied on a footnote in the Eleventh Circuit's decision in *Cooper–Houston v. Southern Railway Company,* 37 F.3d 603 (11th Cir.1994). There, the court stated, "[t]he holding in *Jones,* however, applies only to Title VII cases in which a plaintiff has not been termi-

---

4. Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prich-* *ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

nated and therefore cannot show that he or she was replaced by a person outside of the protected class." *Id.* at 605 n. 4. In *Dudley* and *Lester,* the Court went a step further and concluded that, because the *Jones* prima facie case standard did not apply to a wrongful termination claim, the prima facie case standard set forth in *Hawkins, supra,* which requires the plaintiff to establish that his or her position was filled by a person outside of the protected class, was the requisite standard. *See Dudley,* 931 F.Supp. at 787 (citing *Cooper–Houston,* 37 F.3d at 605 and *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994) for the proposition that the familiar four-element prima facie case set forth above is applicable to wrongful termination claims); *Lester,* 894 F.Supp. at 1515 (same).[5]

It is clear, however, that *Hawkins, supra,* does not represent the only prima facie case standard applicable to Title VII wrongful termination claims. In *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515 (11th Cir.1991), the court held that the fourth element of *Hawkins, supra* (i.e., the requirement that the position be filled by someone outside the protected class), "may also be satisfied by demonstrating that the plaintiff was terminated 'while others not in the plaintiff's protected class, having comparable or lesser

qualifications, were retained, or that the plaintiff suffered from differential application of work or disciplinary rules.'" *Id.* at 1525. (quoting *Nix,* 738 F.2d at 1185) (quoting *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir.1980)) (internal quotations omitted); *see also Breech v. Alabama Power Co.,* 962 F.Supp. 1447, 1457 (S.D.Ala.1997) (utilizing *Weaver* prima facie case formulation). The *Weaver* standard is not a new one; both the Supreme Court and the Eleventh Circuit have consistently held that plaintiffs with wrongful termination claims establish a prima facie case upon proof that they were treated differently than similarly situated [6] non-minority employees. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 280–85, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1280 (11th Cir.1992); *Hawkins,* 883 F.2d at 984 ("If disciplinary rules are applied discriminatorily, it is unnecessary to show that plaintiff was replaced by a nonminority") (citing *Cockrham v. South Central Bell Tel. Co.,* 695 F.2d 143, 145 (5th Cir.1983)); *Marshall v. Western Grain Co., Inc.,* 838 F.2d 1165, 1167–68 (11th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *Nix,* 738 F.2d at 1185; *Turner v. Texas Instruments. Inc.,* 555 F.2d 1251, 1255 (5th Cir.1977).[7] Accordingly, to determine wheth-

---

**5.** In both *Dudley* and *Lester* the Court stated that the Eleventh Circuit's decision in *Green, supra,* "emphasized that a plaintiff cannot make out a prima facie case if he or she does not show that the position was in fact 'awarded to a person of a non-protected class.'" *Dudley,* 931 F.Supp. at 788 (quoting *Green,* 25 F.3d at 978); *Lester,* 894 F.Supp. at 1515 (same). A careful reading of *Green,* however, reveals that the court did not hold that the prima facie case for a wrongful termination claim necessarily includes proof that the position was awarded to someone outside the protected class. The court simply did not address the issue of whether there was more than one acceptable formulation of the prima facie case standard for wrongful termination claims. Instead, the court's holding focused on the sufficiency of the evidence under one formulation of this prima facie standard. *Green,* 25 F.3d at 978–79. Therefore, the Court's above-quoted statement reflects an erroneous interpretation of *Green* to which the Court will not adhere.

**6.** In *Marshall v. Western Grain Co., Inc.,* 838 F.2d 1165 (11th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988), the court stated, "[i]n employment discrimination cases,

the question of whether the plaintiffs are similarly situated with non-minority members is crucial." *Id.* at 1168. In *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317 (5th Cir.1981), the court explained that, at the prima facie case stage for a wrongful termination claim, the comparison between employees should not focus on job status and/or skill: "Differences in job status and skill may well have an impact on the second phase of proof under *McDonnell–Douglas,* in which the employer must prove a legitimate and nondiscriminatory reason for the differing treatment, but they should not defeat a prima facie case as alleged under *Turner.*" *Id.* at 322; *see also Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1280 (11th Cir.1992). Instead, during the evaluation of a plaintiff's prima facie case, it appears that courts should focus on whether employees are similarly situated in terms of disciplinary record and employment status, i.e., whether the employee is probationary, tenured, part-time, etc. . . . . .

**7.** Because the prima facie case standard articulated in *Jones* contains some of the same elements as the standard articulated in *Weaver,* the

er Moore and Kelly have established a prima facie case of intentional discrimination, the Court will utilize the *Weaver* Court's formulation of the prima facie standard.[8]

Defendants do not dispute that Moore and Kelly are members of a protected class, were qualified for their jobs and were terminated. Therefore, if these plaintiffs have produced any evidence that similarly situated CCWC employees, not within plaintiffs' protected class, committed the same offense plaintiffs committed but were not terminated, Moore and Kelly will have established their prima facie case. *Weaver,* 922 F.2d at 1525; *Nix,* 738 F.2d at 1185.

■ To establish their prima facie case, plaintiffs claim that the white officer in charge at CCWC the day the D.R. died, Sgt. Pelzer, was not disciplined. However, there is no evidence in the record which indicates, nor do the plaintiffs allege, that Sgt. Pelzer either abused or witnessed D.R. abuse at any time. In fact, it is not clear from the record that Sgt. Pelzer violated any CCWC or ADOC rule or regulation. Because the plaintiffs have failed to establish that Sgt. Pelzer committed the same offense that led to their termination, the fact that Sgt. Pelzer was not disciplined does not establish Moore and Kel-

ly's prima facie case. *See Hawkins,* 883 F.2d at 984 (holding that under disparate discipline theory, to establish a prima facie case plaintiff must prove that "he was discharged for misconduct which was **nearly identical** to that engaged in by one outside the protected class whom the employer retained.") (emphasis added).

■ Plaintiffs also claim that they have established their prima facie case by adducing proof that white CCWC employees who either abused D.R.'s or witnessed such abuse were not terminated. To support this claim, plaintiffs direct the Court's attention to redacted copies of a "Dismissal Appeal Hearing Transcript held on May 4 & 5, 1994" ("Dismissal Appeal Transcript") and a "Transcript of Hearing from State of Alabama Personnel Board on May 19, 1994" ("Personnel Board Transcript"). In the Dismissal Appeal Transcript it appears that a number of unidentified individuals testify that they either participated in or observed verbal and/or physical abuse of D.R.'s at CCWC. Dismissal Appeal Transcript at 108–132, 162, 164, 208, 302, 361–62. However, because there are no indicators as to when one witness stops testifying and another begins, the Court cannot be sure whether one or multi-

---

*Cooper–Houston* Court's statement that the *Jones* standard does not apply to wrongful termination claims appears to be inconsistent with Weaver and the above-cited cases. However, when read in context, the *Cooper–Houston* Court's statement appears explanatory rather than mandatory.

In *Cooper–Houston,* the court held that plaintiff had established a prima facie case by showing that she was black, was qualified for her job, was terminated and was replaced by a white person. 37 F.3d at 605. The defendant argued that plaintiff had not established a prima facie case because plaintiff had failed to satisfy the *Jones* prima face case standard. *Id.* at 605 n. 4. The court rebuffed defendant's argument by stating, "[t]he holding in *Jones,* however, applies only to Title VII cases in which a plaintiff has not been terminated and **therefore cannot show that he or she was replaced by a person outside of the protected class.**" *Id.* (emphasis added). Because the plaintiff in *Cooper–Houston* could show that she was replaced by someone outside the protected class, the plaintiff did not need to rely on the *Jones* prima facie case standard. The court's statement merely reflects the fact that a plaintiff need not satisfy every possible formulation of the prima facie case to discharge his or her initial burden of production.

Moreover, the *Cooper–Houston* Court did not state that *Jones* or a *Jones*-like standard could not apply in a wrongful termination case where there is no evidence that the position was filled by someone outside the protected class. The *Cooper–Houston* Court simply had no cause to make such a statement because the plaintiff's factual situation fit neatly within the *Hawkins* prima facie case formulation.

Finally, it is difficult for the Court to believe that the *Cooper–Houston* Court would overrule years of precedent with such little fanfare. The Court does not believe that the Eleventh Circuit would make such a substantial change in the employment discrimination law of this Circuit by merely dropping a footnote and without providing any further explanation.

8. To the extent the Court's decisions in *Dudley* and *Lester* are inconsistent with this finding, for the reasons set forth above, the Court believes *Dudley* and *Lester* represent a misinterpretation of the controlling law. *See Bean v. Brown,* Civ.A. No. 96–D–233–N· (M.D.Ala. Apr. 2, 1997) (De Ment, J.) (applying *Jones*-like standard to wrongful termination claim); *Harvey v. Montgomery County Bd. of Educ.,* Civ.A. No. 95–D–1514–N (M.D.Ala. Nov. 7, 1996) (De Ment, J.) (same).

ple people testified as to having witnessed or participated in D.R. abuse. *Id.* Furthermore, while it is clear that one testifying individual, identified in questions as "Eddie," was a drill instructor at CCWC, Dismissal Appeal Transcript at 110, if more than one individual testified, the Court cannot discern what connection, if any, the other individuals had with CCWC or ADOC. "Eddie" testified that despite witnessing incidents of D.R. abuse, he failed to make any sort of report. Dismissal Appeal Transcript at 120. None of the other individuals offered any testimony as to what action they did or did not take after witnessing and/or participating in D.R. abuse.

Plaintiff's evidence fails to establish a prima facie case for Moore and Kelly for two reasons. First, plaintiffs' evidence does not reveal the racial or ethnic background of "Eddie" and the other unidentified individuals. To establish their prima facie case, Moore and Kelly had to adduce evidence that they were treated differently than others "not in [their] protected class." *Weaver,* 922 F.2d at 1525 (quotation omitted). Second, nowhere in plaintiffs' evidence is there a discussion of what discipline "Eddie" and the other individuals did or did not receive for violating CCWC and ADOC rules and regulations. Under *Weaver,* to establish their prima facie case, plaintiffs had to show that they "suffered from 'differential application of ... disciplinary rules.'" *Id.* (citation omitted). This they have failed to do. Accordingly, the Court finds that Kelly and Moore have failed to establish a prima facie case of intentional discrimination and, consequently, the ADOC defendants' motion for summary judgment on Kelly and Moore's Title VII claims is due to be granted.

■ Defendants apparently concede that Winston has established his prima facie case. Defendants argue, however, that Winston's failure to report and/or prevent D.R. abuse after he allegedly witnessed such abuse violated CCWC and ADOC rules and regulations and, therefore, constitutes a legitimate nondiscriminatory reason for his discharge. The Court agrees; defendants have articulated a legitimate nondiscriminatory reason for discharging Winston. Because defendants

have produced a legitimate nondiscriminatory reason for discharging Winston, the presumption of discrimination which arose from Winston's prima facie case disappears. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). Consequently, Winston must present evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*

■ Winston argues that defendants' proffered reason is pretextual and, in fact, he was discharged because he is black. To support this contention, Winston relies on the same evidence offered by Kelly and Moore to establish a prima facie case. That is, Winston claims that similarly situated CCWC employees who committed the same violation of CCWC and ADOC rules and regulation that he allegedly committed were not terminated. If Winston had adduced evidence to support this contention he would have cast doubt upon defendants' proffered nondiscriminatory reason and a jury question would have remained. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas,* 411 U.S. at 804. However, for the reasons discussed above, plaintiffs' evidence is insufficient "to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538 (quoting *Cooper–Houston,* 37 F.3d at 605). Accordingly, the Court finds the ADOC defendants' motion for summary judgment as to Winston's Title VII claims is due to be granted.

### 42 U.S.C. §§ 1981 and 1983

■ As the Court noted at the outset, plaintiffs bring claims against the ADOC defendants for violating their rights under 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment enforced through 42 U.S.C. § 1983. Because the ADOC defendants are state actors, plaintiffs' § 1981 claims merge into their S 1983 claims. *Pearson v. Macon–Bibb County*

*Hosp. Auth.,* 952 F.2d 1274, 1278 n. 3 (11th Cir.1992) ("The Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.' ") (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)); *Busby,* 931 F.2d at 771–772 n. 6 (noting that "section 1981 can provide no broader remedy against a state actor than section 1983").

■ Defendants argue that they are shielded from plaintiffs' § 1983 claims by Eleventh Amendment absolute immunity and/or qualified immunity. However, because the elements of a public sector employment discrimination case are the same under both Title VII and § 1983, *Johnson v. City of Fort Lauderdale,* 114 F.3d 1089, 1092 n. 4 (11th Cir.1997), the Court does not need to address defendants' immunity defenses. As discussed above, plaintiffs Kelly and Moore have failed to establish a prima facie case of intentional discrimination and plaintiff Winston has failed to rebut defendants' legitimate nondiscriminatory reason for his termination. Accordingly, the Court finds that defendants' motion for summary judgment as to plaintiffs' 42 U.S.C. §§ 1981 and 1983 claims is due to be granted.

### *ORDER*

In accordance with the foregoing Memorandum Opinion, it is CONSIDERED and ORDERED that the plaintiffs' claims against the Personnel defendants, SPB, SPD and Ballard, are hereby DISMISSED and the Personnel defendants' motion for summary judgment is hereby DENIED as MOOT.

It is further CONSIDERED and ORDERED that the ADOC defendants', State of Alabama, ADOC, CCWC, Jones and the Governor, motion for summary judgment be and the same is hereby GRANTED. A judgment in favor of these defendants will be entered separately.