**Sherian ROBERTSON, Plaintiff,**

v.

**JEFFERSON COUNTY REHABILITATION AND HEALTH CENTER, Defendant.**

**No. CV 01–BU–1575–S.**

United States District Court,
N.D. Alabama,
Southern Division.

May 13, 2002.

---

**1174**

Jerry D. Roberson, Esq., Roberson & Roberson, Birmingham, for Plaintiff.

Jeffrey M. Sewell, Esq., Jefferson County Attorney's Office, Birmingham, for Defendant.

Memorandum Opinion & Order

BUTTRAM, District Judge.

Plaintiff Sherian Robertson brings this action alleging that, by terminating her employment, Defendant Jefferson County Rehabilitation and Health Center ("Health Center") subjected her to race discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Now before the Court is the Health Center's motion for summary judgment, filed February 28, 2002. (Doc. 14). The Court concludes that the motion is due to be **GRANTED IN PART**, as to the retaliation claim, **AND DENIED IN PART**, as to the race discrimination claim.

The Health Center is a county-run nursing home. About 88% of its approximately 250 employees are African–American. Plaintiff, a white female, was employed there as a licensed practical nurse ("LPN") from August 1991 until she was terminated on June 19, 2000. Plaintiff claims that she was discharged because of race[1] and because she filed an EEOC charge on August 24, 1999 and wrote two memos in July and August 1999 to the Health Center's Director, Patrick Nicovich, a white male, in which Plaintiff claimed that she believed she had been subjected to race discrimination.[2]

## I. The Race Discrimination Claim

The Health Center first argues that it is entitled to summary judgment on Plaintiff's race discrimination claim because she cannot make out a prima facie case under the burden-shifting framework articulated

---

1. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

2. Title VII also prohibits an employer from "discriminat[ing] against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). More specifically, the Health Center argues that a plaintiff claiming racially discriminatory discharge must show that she was replaced by a someone of another race, and the Health Center emphasizes that it replaced Plaintiff with another white female. The Court concludes, however, that even assuming that Plaintiff was so replaced, such would neither preclude Plaintiff from making a prima facie case nor entitle the Health Center to summary judgment.

■ The Eleventh Circuit has long held that a plaintiff claiming discriminatory discharge is not precluded from establishing a prima facie case using circumstantial evidence even though she may have been replaced by a person within the same protected classification. *See Hawkins v. Ceco Corp.,* 883 F.2d 977, 984 (11th Cir.1989); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1560 (11th Cir.1986); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). *See also Howard v. Roadway Exp., Inc.,* 726 F.2d 1529, 1534–35 (11th Cir.1984) (holding that a plaintiff had established a prima facie case of racially discriminatory failure-to-hire notwithstanding evidence that the position sought by the plaintiff was ultimately filled with a person of the same race as the plaintiff); *Handley v. Center Companies, Inc.,* 805 F.2d 1034 (table), 1986 WL 18073, *2 (6th Cir.1986) ("It is simply neither the law nor the intent of Title VII to require a finding of prima facie discrimination to turn on whether a plaintiff's replacement after discharge is of the same race.") *Cf. O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (noting in a case brought under the Age Discrimination in Employment Act, "The fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out *because of his age.*" (emphasis original)). The fact that Plaintiff was replaced by another white female, standing alone, in no way forecloses the possibility that Plaintiff can show that she was fired because of her race in violation of Title VII. Thus, the Health Center's proffer fails to demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, as required of the movant by Fed.R.Civ.P. 56(c). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

■ Next, the Health Center argues that summary judgment is warranted because the evidence shows that it fired Plaintiff for legitimate reasons. It is clear that the Health Center has satisfied its burden of production at the intermediary stage of *McDonnell Douglas.* There is ample evidence indicating that the Health Center fired Plaintiff most directly because its managers believed that, while in a public area in front of other staff and patients on June 3, 2000, Plaintiff engaged in a loud and disruptive argument with her subordinate, Certified Nursing Assistant ("CNA") Margo Evans. The Health Center also offers evidence indicating that Plaintiff's "entire employment record," which included approximately 39 prior verbal and written warnings and a number of suspensions, was considered when determining her punishment for the incident with Evans. The Health Center maintains that Plaintiff cannot show that these reasons are pretextual, so summary judgment in its favor is due.

■ In order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder

to conclude, at a minimum, that the Health Center's proffered reasons were not actually the motivation for its decision. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). Plaintiff may do this (1) by showing that the employer's legitimate nondiscriminatory reason should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996). *See also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but cautioning that such a showing may not always be adequate to sustain a finding of unlawful discrimination).

With regard to the role that Plaintiff's disciplinary record played in her termination, Plaintiff admits that she was subjected to discipline in the 39-or-so instances related by the Health Center. However, the Court agrees with Plaintiff that the evidence reasonably suggests that, while Plaintiff's "entire" disciplinary record may have been "reviewed" by the relevant decisionmakers, the bulk of such record was not actually *relied upon* as justifying the decision to terminate Plaintiff. More than 30 of the instances in which Plaintiff was subjected to discipline over her nine years at the Health Center involved warnings, mostly of verbal variety, relating to relatively insignificant errors of administration of medication or the documentation thereof, along with a few warnings relating to attendance policy issues. And more importantly, the relevant decisionmakers, Nicovich, Director of Nursing Christine White (African–American female), and Jefferson County Commissioner Jeff Germany (African–American male)[3], each indicated that only the aspect of Plaintiff's disciplinary record relating to problems with her behavior towards peers and subordinates, and not that which related to her clinical nursing skills, actually played a part in their respective termination decisions. Thus, the Court concludes that a jury could reasonably find that the instances that Plaintiff was disciplined for reasons other than alleged problems getting along with coworkers were not a factor in the employment decision.[4]

 It is well established that a plaintiff generally may show pretext by presenting

---

3. The record suggests that White and Nicovich discussed the issue of whether to fire Plaintiff and that they agreed to recommend that such be done following the June 3, 2000 incident with Margo Evans. Commissioner Germany is the final decisionmaker under Alabama law, and he actually imposed that punishment, based upon the recommendation and after his review of the facts.

4. At the time of her termination, Plaintiff had been subjected to the following disciplinary actions relating to her behavior:

August 1994: Plaintiff, along with three other employees, were sent to conflict resolution counseling after Plaintiff reported that another LPN had forged her initials on a chart to cover up her own medication error.

The evidence suggests, however, that Plaintiff was not deemed to have committed any wrongdoing on this occasion and was not subjected to any formal discipline.

December 8, 1997: written warning because Plaintiff was alleged to have been rude to another LPN, Felicia Barron, in telling her to get out of Plaintiff's seat at the nurses station.

February 3, 1998: One day suspension, based on a charge that Plaintiff overstepped her authority by ordering Barron, her peer, to feed a patient and then allegedly discussing Barron's shortcomings in a meeting with subordinates.

January 12, 1999: Written warning for being rude to another LPN, Crystal Shouse.

evidence that a similarly situated employee of another race was treated more favorably with regard to discipline. *See Rojas v. Florida*, 285 F.3d 1339, 1343–44 (11th Cir.2002). As a would-be comparator, Plaintiff points first to African–American LPN Walnetta Jackson, who she claims was guilty of similar and even more serious rules violations than was Plaintiff, and yet Jackson continued in her employment until it was later shown that she had been abusing patients. *See* Defendant's Exhibit 69, Plaintiff's Exhibits 86–92. In particular, Plaintiff asserts that she reported to management an incident in June 1999 wherein Jackson physically nudged her off balance and screamed in a public area that Plaintiff was a "white bitch." *See* Plaintiff's Depo., Defendant's Ex. 52, at 30, 40; Defendant's Exhibit 69, Plaintiff's Exhibit 92. Plaintiff also points to various other disciplinary actions against Jackson for instances of outright insubordination that resulted in mere written warnings and brief suspensions. Defendant expressly acknowledges that Jackson is a valid comparator in that she is also an LPN and that she had a similarly long history of disciplinary problems. Nor does Defendant dispute that Jackson's actions on June 9, 1999 were themselves as bad or worse than what Plaintiff did on June 3, 2000. Rather, Defendant contends that neither Jackson's racially hostile outburst at Plaintiff nor her other misconduct resulted in a resident complaint, which Defendant asserts is the aspect of Plaintiff's June 3rd argument that made her offense significantly more serious and justified termination. Defendant emphasizes that "the evidence in this case is undisputed that when a County Home employee engages in behavior which results in a patient complaint, its chain of command recommends termination and Commissioner Germany follows that recommendation." Defendant's Reply Brief at 5. However, the record does not support that the Health Center followed any such policy. Indeed, Jackson herself was subjected to disciplinary action on April 12, 1998 for neglect of duty and conduct unbecoming an employee based upon a complaint filed by a resident that Jackson had been rude to her and also a complaint made by a resident's sponsor [5] that Jackson had been unwilling to answer her simple question regarding her mother. Defendant's Exhibit 69, Plaintiff's Exhibit 86. For this, however, Jackson received only a verbal warning, despite the fact that she had by that point collected multiple disciplinary actions relating to inappropriate behavior.[6]

---

October 26, 1999: Three-day suspension based upon allegations that Plaintiff had "talked down" to her subordinate, CNA Deborah Fendley.

August 16, 1999: Written warning for "displaying un-professional behavior" and "disrespecting [her] co-workers [and her] supervisor."

5. A sponsor is a resident's spouse, child, next of kin or other person that would be contacted in event that a decision had to be made with regard to a resident who could not make their own decisions.

6. At that point, Jackson had been subjected to the following disciplinary actions relating to inappropriate behavior:

1/30/92: Insubordination charged for acting "angry and hostile" to her supervisor, and for refusing to discuss with her supervisor a memo Jackson had written in which she complained about her work assignment. Verbal warning. Defendant's Exhibit 69, Plaintiff's Exhibit 91.

9/1/94: Conduct unbecoming, for "slamming down" phone after speaking with her supervisor and then becoming insubordinate with another supervisor. Id., Plaintiff's Exhibit 89.

9/17/94: Conduct unbecoming and insubordination for hanging up telephone on her supervisor and for threatening to leave the premises because of a work assignment. *Id.*, Plaintiff's Exhibit 90.

Plaintiff points to additional evidence that, Parthenia White, Catherine Smith, and Nikki Moore, African–American CNAs, engaged in conduct that might reasonably be viewed as similar or worse than that of Plaintiff, and yet received lesser discipline.[7] For purposes of the motion, the Health Center concedes that such may be true. However, citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997), it argues that in order to be a proper comparator, an employee must be similarly situated in all respects to the plaintiff. Thus, the Health Center contends, the plaintiff and a valid comparator must be "in the same job (i.e., LPN)." Defendant's Brief at 14. But as the Plaintiff notes, the relevant inquiry is not whether the plaintiff and a would-be comparator have the same job title, but whether they are both subject to the same employment policies. *See Lathem v. Department of Children and Youth Services*, 172 F.3d 786 (11th Cir.1999). Here, there is no question that LPNS and CNAS are both civil service employees subject to the Rules of the Personnel Board of Jefferson County, and there is no written policy indicating that CNAs and LPNs are subjected to differing standards of discipline. Moreover, it appears that the Health Center repeatedly disciplined CNAs for conduct that was very similar to or worse than that committed by Plaintiff; the CNAs were just warned and suspended, rather than being fired. The Court concludes that the record reveals that there is a genuine issue of fact with regard to whether Plaintiff was disciplined more severely because of her race.

## II. The Retaliation Claim

Defendant also contends that it is entitled to summary judgment on Plaintiff's claim that she was discharged for engaging in conduct protected by Title VII's anti-retaliation provision, 42 U.S.C. § 2000e–3(a). In order to establish a prima facie case of retaliation under Title VII, an employee must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir.2001).

The Health Center is willing to assume for purposes of its motion that Plaintiff engaged in protected activity by virtue of her two internal complaints in July and August 1999 and her EEOC charge filed August 24, 1999. There is also no question that Plaintiff suffered an adverse employment action in being fired. However, the Health Center argues that Plaintiff cannot establish the requisite causal nexus to make out a prima facie case. The Court agrees.

The causal link element of a Title VII retaliation claim generally is construed broadly so that " 'a plaintiff merely has to prove that the protected activity

---

5/8/95: Insubordination, conduct unbecoming, for hanging up on her supervisor who was attempting to give Jackson's work assignment. *Id.*, Plaintiff's Exhibit 88.

7. Plaintiff alleges that she complained to management in 1994 that White screamed at her, calling her a "white bitch," and threatened to kill her while holding a metal bar. Although Plaintiff secured a restraining order against White, the Health Center allegedly imposed no significant discipline. Similarly, Plaintiff alleges, and Defendant does not dispute, that CNA Catherine Smith has been accused of being insubordinate, loud and disruptive in patient areas, using profanity, stealing a resident's book, and sleeping in a resident's room. She is still in the Health Center's employ. CNA Nikki Moore has also been charged with screaming and yelling in a patient area, using profanity, and being disrespectful to her superior. She was never given more than a 10–day suspension.

and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993))). Thus, a "close temporal proximity" between the plaintiff's protected conduct and an adverse employment action generally is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999). On the other hand, the Eleventh Circuit has indicated that a substantial delay between the protected activity and the adverse action and the absence of other evidence tending to show causation may justify judgment as a matter of law for the employer. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir.2001); *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir.1999). Moreover, no matter how close the adverse action follows on the heels of protected activity, if the plaintiff cannot present evidence sufficient to indicate that the decisionmaker was aware of the plaintiff's protected activity, then a causal connection would be lacking. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997).

There is no evidence indicating that any of the relevant decisionmakers ever made remarks suggesting a bias against Plaintiff because she engaged in protected activity. It is also undisputed that approximately ten months separated Plaintiff's protected activity in late July and August 1999 from her firing in June 2000. Plaintiff alleges, though, that soon after she engaged in protected activity, her immediate supervisors, RN Rodney Willis and Mary Watterson and Assistant Director of Nursing Carlette Smith, began to impose a slew of lesser disciplinary actions. Plaintiff contends that these lesser actions were used later to help justify her termination and, Plaintiff suggests, they show that the employer generally had a retaliatory animus that carried over to the termination decision.

The Court would first note that it is very questionable whether the several disciplinary actions imposed on Plaintiff following soon after she engaged in protected activity really represent any substantial change in the pattern of discipline against Plaintiff. But more importantly, the Court concludes that Plaintiff has failed to dispute evidence indicating that none of the immediate supervisors who imposed these lesser disciplinary actions were aware of Plaintiff's protected activity, precluding any causal connection. Plaintiff states that she gave her internal complaints to Nicovich, but he played no role in the lesser disciplinary actions in question. In addition, Nicovich states that he kept Plaintiff's two internal memos and did not distribute copies to any other personnel. Nor does the evidence suggest that any of these supervisors were aware of Plaintiff's EEOC charge when they imposed these warnings and suspensions. Nicovich had received Plaintiff's two memos charging discrimination in about early and mid-August 1999, and he received notice of her EEOC charge sometime soon thereafter. Commissioner Jeff Germany received Plaintiff's first memo complaining of race discrimination when he held an August 17, 1999 hearing on a recommended suspension against Plaintiff, but he claims he was unaware of her other memo or her EEOC charge. However, that still leaves approximately 10 months between the time that Nicovich and Germany became aware of

Plaintiff's protected conduct and the time they made their respective recommendation and decision to terminate Plaintiff's employment. In light of that time delay, and the absence of any substantial evidence indicating a retaliatory animus, the Court concludes that Plaintiff has failed to present sufficient evidence to allow a reasonable finding of a causal link. Thus, her retaliation claim fails at the prima facie stage, and summary judgment shall be granted upon that claim.

### III. Conclusion

Based upon the foregoing, the Health Center's motion for summary judgment (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as it pertains to Plaintiff's Title VII claim alleging unlawful retaliation, as the Court concludes that there is no genuine issue of material fact and that the Health Center is entitled to judgment as a matter of law on that claim. However, the motion is **DENIED** as it pertains to Plaintiff's race discrimination claim, because the Court finds there to be a genuine issue of fact with regard to whether Plaintiff was disciplined more severely because of race.